UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ROBERT A. KAYAL, M.D. and KIM S. KAYAL, | : : : : | |
| Plaintiffs, | : : | |
| v. | : : | Civil Action No. 17-3565-BRM-DEA |
| SIGNAL HILL REALTY CORP., MICHAEL FALCONE, and VINCENT FALCONE, | : : : : | **OPINION** |
| Defendants. | : : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendants Signal Hill Realty Corp. ("Signal Hill"), Michael Falcone ("Michael"), and Vincent Falcone's ("Vincent,"[1] together with Michael, the "Falcone Defendants") (collectively, "Defendants") Motion to Dismiss the First Amended Complaint ("FAC"), pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 22.) Plaintiffs Robert A. Kayal and Kim S. Kayal ("Plaintiffs") oppose the Motion. (ECF No. 24.) Having reviewed the submissions filed in connection with the Motion and having declined to hear oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause shown, Defendants' Motion to Dismiss is **GRANTED in part WITHOUT PREJUDICE** and **DENIED in part**.

---

[1] The Court means no disrespect by referring to Defendants by their first names. It does so to avoid confusion.

## I. BACKGROUND

For the purpose of this Motion to Dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). This matter arises out of Defendants' "shoddy materials and construction of, and subsequent failure to repair, two homes" purchased by Plaintiffs. (ECF No. 21 ¶ 1.)

Plaintiffs are the owners of two real properties located at 1206 Ocean Avenue, Belmar, New Jersey ("1206") and 1204 Ocean Avenue ("1204") (together, the "Properties"). (*Id.* ¶ 7.) Signal Hill is a "conduction business in the State of New Jersey." (*Id.* ¶ 8.) The Falcone Defendants are co-owners of Signal Hill and at all relevant times "were acting within the scope of their ownership of [] Signal Hill." (*Id.* ¶¶ 9-11.)

In 2011, Plaintiffs purchased 1206 from Signal Hill for $2,150,000. (*Id.* ¶ 18.) In 2013, Plaintiffs were interested in investing in another beachfront property and sought to purchase 1204, the property adjacent to 1206. (*Id.* ¶ 20.) Between the time they purchased 1206 and when they began looking to purchase 1204, Plaintiffs noticed "certain problems with the construction of 1206." (*Id.* ¶ 21.) Plaintiffs allege that, by the summer of 2013, the siding of 1206 "began to significantly discolor, deteriorate and fall off the side," to the extent that the original colors faded and the siding appeared to be white. (*Id.* ¶¶ 22-23.) Wary of 1204 containing the same issues, Plaintiffs inspected the siding of the not-yet-purchased 1204 and realized it had the same issues. (*Id.* ¶ 24.) Therefore, Plaintiffs notified the Falcone Defendants who allegedly acknowledged there was a problem with the siding of 1206. (*Id.* at ¶¶ 25- 26.) As such, Plaintiffs refused to purchase 1204 unless Defendants "promised to first fix the siding on 1206, and then fix the siding on 1204."

(*Id*. at ¶ 27.) Eager to sell 1204 to Plaintiffs, the Falcone Defendants allegedly agreed to fix the siding on the properties before closing title on 1204. (*Id*. at ¶ 28.)

Plaintiffs also insisted that several other home repairs be made to 1204 prior to the closing such as the central vacuum system and master bathroom wall, as well as the Jacuzzi located at 1206. (*Id.* at ¶¶ 29-30.) Allegedly, the Falcone Defendants agreed to make all repairs if Plaintiffs agreed to close title on 1204. (*Id.* at ¶ 31.) "However, unbeknownst to Plaintiffs at the time, Defendants made these promises never intending to make any repairs, but instead to just get Plaintiffs to execute a contract for sale and close on 1204." (*Id.* at ¶ 32.) Based on the alleged misrepresentations of Defendants, Plaintiffs executed a contract for sale in the amount of $2,175,000 and closed on 1204. (*Id.* at ¶ 33.)

After the closing, Plaintiffs claim Defendants went "radio silent" and never made the agreed upon repairs to either 1204 or 1206. (*Id.* at ¶¶ 35-37.) Because of the alleged scheme, Plaintiffs allege they have "suffered damages, including but not limited to the cost of repairing the two homes." (*Id.* at ¶ 40.)

On March 2, 2017, Plaintiffs filed a Complaint against Defendants in the Superior Court of New Jersey. (ECF No. 2-4.) On May 18, 2017, Defendants removed the matter to this Court. (ECF No. 2.) On September 25, 2017, Defendants filed a Motion to Dismiss the Complaint. (ECF No. 9.) In response to the Motion, Plaintiffs filed a Cross Motion to Amend the Complaint. (ECF No. 15.) As a result, the parties filed a stipulation whereby Defendants agreed to withdraw their Motion and allowed Plaintiffs to file an amended complaint. (ECF No. 19.)

Plaintiffs filed their FAC on December 11, 2017, alleging four counts: (1) violation of the New Jersey Consumer Fraud Act ("NJCFA"); (2) common law fraud; (3) breach of contract; and (4) breach of the covenant of good faith and fair dealing. (ECF No. 21.) On January 10, 2018,

Defendants filed a Motion to Dismiss the FAC. (ECF No. 22.) Defendants oppose the Motion. (ECF No. 24.)

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than 'an unadorned, the-defendant-harmed-me accusation" must be pled; it

must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While as a general rule, a court many not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant under Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.,* 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d at 1426.

### B. Federal Rule of Civil Procedure 9(b)

Fraud based claims are subject to a heightened pleading standard, requiring a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). For a fraud based claim, a court may grant a motion to dismiss pursuant to Federal Rule of Civil Procedure 9(b) if the plaintiff fails to plead with the required particularity. *See Frederico v. Home Depot*, 507 F.3d 188, 200-02 (3d Cir. 2007). The level of particularity required is sufficient details to put the defendant on notice of the "precise misconduct with which [it is] charged." *Id.* at 200 (citation omitted). At a minimum, Rule 9(b) requires a plaintiff to allege the "essential factual background that would accompany the first paragraph of any newspaper story—that is, the 'who,

what, when, where and how' of the events at issue." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276-77 (3d Cir. 2006) (citation omitted). The heightened pleading standard set forth in Rule 9(b) applies to Plaintiff's CFA and common law fraud claims. *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 524 (D.N.J. 2008) (applying Rule 9(b) to CFA and common law fraud claims).

### III. DECISION

#### A. NJCFA—Count I

Defendants argue Plaintiffs "fail[] to articulate what, if any provisions of the [CFA] any of the [D]efendants violated." (ECF No. 22-1 at 4.) They further argue the FAC does not state a CFA claim against the Falcone Defendants because there was no privity between them and Plaintiffs. (*Id.*) Plaintiffs argue they have sufficiently plead each of the elements of a NJCFA claim and that there is no "privity" requirement in the NJCFA. (ECF No. 24 at 9.)

The NJCFA states, in pertinent part:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice; . . . .

N.J. Stat. Ann. § 56:8-2. Courts have interpreted this section to require the following three elements to state a cause of action under the CFA: "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009) (citing *Int'l Union of*

6

*Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 929 A.2d 1076, 1086 (N.J. 2007)).

An "unlawful practice" is defined as:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby . . . .

N.J. Stat. Ann. § 56:8-2. "The [CFA] creates three categories of unlawful practices: affirmative acts, knowing omissions, and violations of state regulations." *Maniscalco v. Brother Int'l Corp. (USA)*, 627 F. Supp. 2d 494, 499 (D.N.J. 2009) (quoting *Vukovich v. Haifa*, No. 03-737, 2007 WL 655597, *9 (D.N.J. Feb 27, 2007) (citing *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994))). Affirmative acts require no showing of intent on behalf of the defendant. *See Cox*, 647 A.2d at 462; *Fenwick v. Kay Am. Jeep, Inc.*, 371 A.2d 13, 16 (N.J. 1977). "Thus, a defendant who makes an affirmative misrepresentation is liable even in the absence of knowledge of the falsity of the misrepresentation, negligence or the intent to deceive." *Vukovich*, 2007 WL 655597, at *9 (citation omitted). "In contrast, when the alleged consumer fraud consists of an omission, a plaintiff must show that the defendant acted with knowledge, thereby making intent an essential element of the fraud." *Id.*

"The third category of unlawful acts consists of violations of specific regulations promulgated under the [CFA]." *Cox*, 647 A.2d at 462. "In those instances, intent is not an element of the unlawful practice, and the regulations impose strict liability for such violations." *Id.* (citation omitted). Unlawful acts expressly regulated by other statutes, regulations, or rules not promulgated

7

under the CFA can give rise to a CFA claim. *See Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 696 A.2d 546, 551-56 (N.J. 1997); *Henderson v. Hertz Corp.*, No. L-6937-03, 2005 WL 4127090, at *5 (N.J. Super. Ct. App. Div. June 22, 2006). However, the CFA does not create strict liability for violations of other statutes, regulations, or rules not promulgated under the CFA. *See Henderson*, 2005 WL 4127090, at *5.

An "ascertainable loss" is one that is "quantifiable or measurable." *Thiedemann v. Mercedes-Benz USA, LLC,* 872 A.2d 783, 793. (N.J. 2005). A "plaintiff must suffer a definite, certain and measurable loss, rather than one that is merely theoretical." *Bosland*, 964 A.2d at 749. Additionally, plaintiffs must set forth allegations sufficient to show those losses are causally connected to defendant's alleged conduct. *Id*. It is not sufficient to make conclusory or broad-brush allegations regarding defendant's conduct; plaintiff must specifically plead those facts. *Torres-Hernandez*, No. 08-1057, 2008 WL 5381227, at *7 (D.N.J. Dec. 17, 2008). This requires, for example, pleading when and to whom the alleged fraudulent statements were made. *See Dewey*, 558 F. Supp. 2d at 527.

Here, Plaintiffs have satisfied all elements of a NJCFA claim. Contrary to Defendants' argument, no privity of contract is required to establish a NJCFA claim. Moreover, "corporate officers and employees could be individually liable pursuant to the CFA for their affirmative acts of misrepresentation to a consumer." *Allen v. V & A Bros.*, 26 A.3d 430, 441 (2011). Courts have even gone as far to recognize "that individuals may be independently liable for violations of the CFA, notwithstanding the fact that they were acting through a corporation at the time." *Id.* Courts focus on the individual employees' acts "to determine whether the specific individual had engaged in conduct prohibited by the CFA." *Id.* Therefore, the Falcone Defendants could be held liable under the NJCFA.

Plaintiffs allege they were fraudulently induced into purchasing 1204 based on knowing misrepresentations and promises by Defendants that they would conduct certain repairs to both 1204 and 1206, prior to and after closing on 1204. (ECF No. 21 ¶¶ 32-37, 43.) In addition, Plaintiffs also alleged ascertainable loss, as they allege a loss in the amount of the cost of repairs Defendants refused to make to the two houses. (*Id.* ¶ 45.) Lastly, Plaintiffs have satisfied the "casual connection" prong of a NJCFA claim. The FAC contends Plaintiffs suffered damages as a direct result of Defendants failing to make the promised repairs to 1204 and 1206. (*Id.* ¶ 40.) Accordingly, Plaintiffs have sufficiently set forth allegations to support each element of a NJCFA claim, and therefore, Defendants' Motion to Dismiss Plaintiffs' NJCFA claim is **DENIED**.

### B. Common Law Fraud—Count II

Defendants, without identifying the deficiencies in the FAC and instead listing the elements of a common law fraud claim and concluding Plaintiffs have failed to allege them, argue Plaintiffs failed to properly allege any of the common law fraud elements. (ECF No. 22-1 at 7-8.) Plaintiffs argue they have plead each of the elements with ample specificity. (ECF No. 24 at 11.) The Court agrees with Plaintiffs.

To state a claim for common law fraud under New Jersey law, a plaintiff must allege "(1) [the defendant made] a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) [the defendant had] an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Triffin v. Automatic Data Processing, Inc.*, 926 A.2d 362, 368 (N.J. Super. Ct. App. Div. 2007) (citing *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997)).

As to the first element, Plaintiffs have plead that Defendants made material misrepresentations. For example, they allege:

> Willing to say anything to get Plaintiffs to close on the still unsold property at 1204, Defendants Vincent and Michael Falcone represented to Plaintiffs that after the execution of the contract for sale on 1204, they would fix the siding on 1206 and then fix the siding on 1204 before the closing of title.

(ECF No. 21 ¶ 27.) This allegation satisfies the level of particularity required for fraud claims by asserting the who, what, when, and specifying the misrepresentation giving rise to the common law fraud claim.

As to the second, third, and fourth elements, Plaintiffs allege Defendants had knowledge of their false misrepresentations. Specifically, they allege "Defendants made these promises never intending to make any repairs, but instead to just get Plaintiffs to execute a contract for sale and close on 1204." (*Id.* ¶ 32.) The FAC goes on to state:

> [] Defendants made these false statements of fact for the sole purpose of inducing Plaintiffs into proceeding with the contract for sale and closing on 1204 [].
>
> [] Defendants knew these misrepresentations were false at the time they were made, and also knew that Plaintiffs would rely upon those misrepresentations to their detriment.
>
> [] Plaintiffs, in fact, relied upon those misrepresentations to their detriment.

(*Id.* ¶¶ 51-53.) These allegations satisfy the how and why of Rule 9(b)'s heightened pleading standard.

Lastly, the FAC clearly alleges that because of the fraud, Plaintiffs "suffered damages, including but not limited to the cost of repairing the two homes." (*Id.* ¶ 40.) Accordingly, Defendants' Motion to Dismiss Plaintiffs' common law fraud claim is **DENIED**.

### C. Breach of Contract – Count III

Defendants argue Plaintiffs' breach of contract claim should be dismissed because there were only two contracts between the parties, the contracts of sale for 1204 and 1206, which they contend were completed, that there were no warranties, and that all contractual obligations were satisfied. (ECF No. 22-1 at 9-10.) Defendants further assert Plaintiffs' breach of contract claim must be dismissed as to the Falcone Defendants because there was no privity of contract between them. (ECF No. 22-1 at 13.) In response, Plaintiffs argue the contract at issue was not the written contract for sale of 1204 or 1206. (ECF No. 24 at 14.) Instead, they allege the parties entered into a verbal agreement, separate from the contracts for sale of 1204 and 1206, whereby Defendants agreed to make repairs to 1204 and 1206 after the execution of the contract for sale on 1204. (*Id.*)

"A party alleging a breach of contract satisfies its pleading requirement if it alleges (1) a contract; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party performed its own contractual duties." *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 210 F. Supp. 2d 552, 561 (D.N.J. 2002) (citations omitted). Contract may be either oral or written. *See McBarron v. Kipling Woods, LLC*, 838 A.2d 490, 491 (N.J. Super. Ct. App. Div. 2004) (stating "parties may orally, by informal memorandum, or by both agree upon all the essential terms of a contract and effectively bind themselves thereon, if that is their intention, even though they contemplate the execution later of a formal document to memorialize their undertaking"). To enforce a contractual agreement there must be privity of contract. *See Gherardi v. Bd. of Ed. of City of Trenton*, 147 A.2d 535, 541 (N.J. Super. Ct. App. Div. 1958) (finding that since defendants "did not have any contractual obligations or agreement with plaintiff, they could not, under any theory, be liable to him for any breach of contract since clearly there was no privity of contract between the parties").

As to the Falcone Defendants, Plaintiffs admit in their FAC that, "[a]t all relevant times, [they] were acting within the scope of their ownership of [] Signal Hill." (ECF No. 21 ¶ 3.) Consequently, they admit no contractual relationship whether written or oral existed between Plaintiffs and the Falcone Defendants in their individual capacities. Accordingly, Plaintiffs have no basis to assert a breach of contract, and their claims under Count III against the Falcone Defendants are **DISMISSED**.

As to Signal Hill, the Court finds Plaintiffs have sufficiently pled a breach of contract claim. First, the FAC alleges a verbal agreement between Plaintiffs and Signal Hill. They allege the parties entered into a verbal agreement, separate from the contract for sale of 1204 and 1206, whereby Defendants agreed to make repairs to 1204 and 1206 after the execution of the contract for sale on 1204. (ECF No. 21 ¶¶ 27-29.) Second, the FAC alleges Signal Hill broke its promise by failing to repair 1204 and 1206 after the closing of 1204. (*Id.* ¶ 34-39.) Third, Plaintiffs contend they suffered damages because of the breach, namely, the cost of making the repairs. (*Id.* ¶ 40.) Lastly, Plaintiffs contend they performed their own contractual duties by closing on 1204. (*Id.* ¶ 33.) Accordingly, Defendants' Motion to Dismiss Plaintiffs' breach of contract claim against the Falcone Defendants is **GRANTED** but **DENIED** as to Signal Hill.

### D. Breach of Covenant of Good Faith and Fair Dealing – Count IV

Defendants argue there is "no independent duty imposed by law upon the defendants" to establish a breach of the covenant of good faith and fair dealing claim. (ECF No. 22-1 at 15-17.) Plaintiffs argue that because they have properly plead Defendants breached an oral contract, they have also established a breach of the covenant of good faith and fair dealing. (ECF No. 24 at 16-17.)

Pursuant to New Jersey law, all contracts have an implied covenant of good faith and fair dealing, which prohibits either party from doing "anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Fields v. Thompson Printing Co.*, 363 F.3d 259, 270 (3d Cir. 2004) (citations omitted); *see Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 864 A.2d 387, 395-96 (N.J. 2005); *R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*, 773 A.2d 1132, 1145-46 (N.J. 2001). "A plaintiff may be entitled to relief under the covenant [of good faith and fair dealing] if its reasonable expectations are destroyed when a defendant acts with ill motives and without any legitimate purpose." *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 267 (3d Cir. 2008) (quoting *Brunswick Hill Racquet Club, Inc.*, 864 A.2d at 396; *Graco, Inc. v. PMC Global, Inc.*, No. 08-1304, 2009 WL 904010 (D.N.J. 2009) ("A defendant who acts with improper purpose or ill motive may be found liable for breaching the implied covenant if the breach upsets the plaintiff's reasonable expectations under the agreement."). "In New Jersey, a plaintiff cannot maintain a claim for breach of the implied covenant of good faith and fair dealing when the conduct at issue is governed by the terms of an express contract or the cause of action arises out of the same conduct underlying the alleged breach of contract." *Hahn v. OnBoard LLC*, No. 09–3639, 2009 WL 4508580, at *6 (D.N.J. Nov. 16, 2009) (citing *Wade v. Kessler Inst.*, 798 A. 2d 1251, 1259–60 (N.J. 2002)).

In pleading Defendants violated the covenant of good faith and fair dealing, Plaintiffs rely on the same cause of action underlying their alleged breach of contract claim. Indeed, the FAC contends:

> [] Defendants were obligated to act fairly and in good faith in the performance of the oral agreement outlined above.
>
> [] Defendants have intentionally, willfully and maliciously disregarded their obligations under this oral agreement.

(ECF No. 21 ¶¶ 63-64.) The Court perceives no legal or factual distinction between Plaintiffs' breach of contract and breach of the covenant of good faith and fair dealing counts. Accordingly, Defendants' Motion to Dismiss Count Four is **GRANTED**.

IV. **CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss Counts One and Two of Plaintiffs' FAC is **DENIED**. Defendants' Motion to Dismiss Count Three is **GRANTED without prejudice** as to the Falcone Defendants but **DENIED** as to Signal Hill. Lastly, Defendants' Motion to Dismiss Count Four is **GRANTED without prejudice** as to all Defendants.


Date: August 29, 2018                            */s/ Brian R. Martinotti*
                                                 **HON. BRIAN R. MARTINOTTI**
                                                 **UNITED STATES DISTRICT JUDGE**